UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KIM MILLBROOK, | : | CIVIL ACTION NO. 3:12-cv-421 |
| | : | |
| Plaintiff | : | (Judge Nealon) |
| | : | |
| v. | : | |
| | : | |
| | : | |
| UNITED STATES OF AMERICA, | : | **FILED** |
| ET AL., | : | **SCRANTON** |
| | : | MAR 2 5 2014 |
| Defendants | : | |

PER _____
DEPUTY CLERK

**MEMORANDUM**

**Background**

Kim Millbrook, an inmate presently confined at the United States

Penitentiary, Lewisburg, Pennsylvania (USP-Lewisburg) filed this combined

Bivens[1]/Federal Tort Claims Act (FTCA)  action.[2]  Named as Defendants are the

United States of America and the following eight (8) USP-Lewisburg employees:

ex-Warden B. A. Bledsoe; Assistant Warden K. Rear; Special Investigative

---

[1]      Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403
U.S. 388 (1971). Bivens stands for the proposition that "a citizen suffering a
compensable injury to a constitutionally protected interest could invoke the general
federal question jurisdiction of the district court to obtain an award of monetary
damages against the responsible federal official." Butz v. Economou, 438 U.S. 478,
504 (1978).

[2]  Accompanying the Complaint are over thirty (30) pages of supporting
exhibits.  However, many of those exhibits lack relevance to the claims raised in the
Complaint.  See Doc. 1-1.

Services (SIS) Lieutenant James Fosnot; Physician Assistant (PA) Jon Hemphill;

Paramedic Bryan Walls; Counselor M. Edinger; Correctional Officer H. Hawk;

and Unknown Correctional Officer John Doe.  Service of the Complaint was

previously ordered.

Plaintiff describes himself as having post traumatic stress and bipolar

disorder.  See Doc. 1, Section V, ¶ 29.  Millbrook states that prior to being

transferred to USP-Lewisburg, he was sexually assaulted by two correctional

officers and stabbed by another inmate at USP-Terre Haute.  After his arrival at

USP-Lewisburg, Plaintiff was placed in the Special Management Unit (SMU)

where he was interviewed by two non-defendants, Captain Trate and SIS Perrin.

He allegedly told those officials that the prisoner who had stabbed him at USP-

Terre Haute was now in the USP-Lewisburg SMU and that they were supposed to

be kept separated from one another.  Plaintiff also informed Trate and Perrin that

a bounty had been placed on him by various prison gangs because he had been

labeled as an informant and therefore he needed to be transferred or placed in

protective custody.  Despite expressing those concerns, those officials told

Millbrook that there was no protective custody in the SMU, he would not be

transferred, and at USP-Lewisburg the policy was"you can fight or get f**ked."

Id. at ¶ 8.  Furthermore, Millbrook was purportedly forewarned that if he refused

to accept a cell mate he would be placed in ambulatory restraints.

Thereafter, Plaintiff claims that he was assaulted by his unidentified cell mate on March 1, 2010.  See id. at ¶ 10.  The Complaint next maintains that Plaintiff was sexually assaulted by three (3) correctional officers in the basement of the SMU on or about March 5, 2010.[3]  Counselor Edinger is identified as being one of three prison staff members who committed the assault.[4]  See id. at ¶¶ 10, 13. According to the Complaint, Plaintiff was again allegedly sexually assaulted on or about November 12, 2010.  This attack was carried out by a different unidentified USP-Lewisburg prisoner.  It is alleged that he was set up by Correctional Officers Hess and Ross, both of whom are non-defendants, and witnessed by Assistant Warden Rear.  See id. at ¶ 12.  Millbrook indicates that the correctional officials who were present were deliberately indifferent.  See id.

The Complaint further states that on or about the afternoon of May 12, 2011, Millbrook was physically attacked by his cell mate, Inmate Pettus.[5] Plaintiff asserts that this latest assault resulted because Defendants failed to take

---

[3] Plaintiff has filed a separate action under the FTCA with this Court, see Millbrook v. USA, Civil No. 3:11-CV-131 (M.D. Pa. filed January 19, 2011), regarding the March 5, 2010 incident.

[4] The other two alleged assailants are not named as defendants in this matter.

[5] Millbrook indicates that he was choked and bitten by Pettus.

3

adequate measures to protect his safety. Specifically, he claims that prior to the incident both he and his cell mate notified prison staff, including Counselor Edinger, that they were not getting along. Moreover, Pettus allegedly told Edinger that he would injure Millbrook unless he was moved to another cell. See id. at ¶ 2. Counselor Edinger purportedly responded that he would not separate the cell mates, he didn't care if they fought one another, and that the prison had an "either fight or go in restraints" policy. Id. at (3). It is also contended that Edinger told Plaintiff that either he would kill him or have him killed for being a snitch. See id. at ¶ 14. The Complaint adds that Inmate Counselor Edinger threatened Plaintiff's life because he was a snitch.

Plaintiff next alleges that Paramedic Walls and an unidentified correctional officer physically and sexually assaulted him while performing a strip search in the SMU shower immediately following the May 12, 2011 incident. See id. at ¶ 17. He maintains that those officials grabbed and pulled his penis and tightly applied hand restraints. The Complaint indicates that Defendant Hawk denied Millbrook's request for medical treatment and failed to take any action in response to his allegations of physical and sexual abuse. Thereafter, PA Hemphill, Warden Bledsoe, Assistant Warden Rear, and Lieutenant Fosnot likewise failed to take appropriate action with respect to the alleged earlier

4

misconduct of Walls and Hawk.

Plaintiff seeks relief under <u>Bivens</u> with respect to all of the above allegations. The FTCA portion of the Complaint solely regards the alleged May 12, 2011 sexual assault by Defendant Walls. <u>See</u> Doc. 1, ¶ 17 and Doc. 1-1, p. 14. The Complaint requests an award of punitive and compensatory damages.

Defendants have responded to the Complaint by submitting a motion to dismiss and for summary judgment. <u>See</u> Doc. 63. The opposed motion is ripe for consideration.

**Discussion**

Defendants seek relief on the grounds: (1) this Court lacks personal jurisdiction over the unknown correctional officer; (2) Plaintiff's claims relating to March 1, 2010 and March 4, 2010 are time barred; (3) there are no allegations of personal involvement by Defendants Bledsoe, Rear, Edinger, Hawk, Walls, Hemphill, and Fosnot, or the claims against those officials are improperly premised on a theory of <u>respondeat superior</u>; (4) Millbrook has not stated a viable claim of failure to protect, retaliation, or deliberate indifference; (5) the May 12, 2011 related claims were not administratively exhausted; (6) Defendant Hemphill has statutory immunity; (7) a cognizable FTCA claim is not stated; and (8) Defendants are entitled to qualified immunity.

5

## Motion to Dismiss

Defendants' pending dispositive motion is supported by evidentiary

materials outside the pleadings. Federal Rule of Civil Procedure 12(d) provides

in part as follows:

> If, on a motion under Rule 12(b)(6) or 12(c), matters
> outside the pleading are presented to and not excluded
> by the court, the motion must be treated as one for
> summary judgment under Rule 56. All parties must be
> given reasonable opportunity to present all the material
> that is pertinent to the motion.

FED. R. CIV. P. 12(b)(d).

This Court will not exclude the evidentiary materials accompanying the

Defendants' motion. Thus, their motion will be treated as solely seeking summary

judgment. See Latham v. United States, 306 Fed. Appx. 716, 718 (3d Cir. 2009)

(When a motion to dismiss has been framed alternatively as a motion for summary

judgment such as in the present case, the alternative filing "is sufficient to place

the parties on notice that summary judgment might be entered.")

## Summary Judgment

Summary judgment is proper if "the pleadings, the discovery and disclosure

materials on file, and any affidavits show that there is no genuine issue as to any

material fact and that the movant is entitled to a judgment as a matter of law."

FED. R. CIV. P. 56(c); See also Saldana v. Kmart Corp., 260 F.3d 228, 231-32 (3d Cir. 2001).  A factual dispute is "material" if it might affect the outcome of the suit under the applicable law.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A factual dispute is "genuine" only if there is a sufficient evidentiary basis that would allow a reasonable fact-finder to return a verdict for the non-moving party.  Id. at 248.  The court must resolve all doubts as to the existence of a genuine issue of material fact in favor of the non-moving party.  Saldana, 260 F.3d at 232; see also Reeder v. Sybron Transition Corp., 142 F.R.D. 607, 609 (M.D. Pa. 1992).  Unsubstantiated arguments made in briefs are not considered evidence of asserted facts.  Versarge v. Township of Clinton, 984 F.2d 1359, 1370 (3d Cir. 1993).

Once the moving party has shown that there is an absence of evidence to support the claims of the non-moving party, the non-moving party may not simply sit back and rest on the allegations in its complaint.  See Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).  Instead, it must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial."  Id. (internal quotations omitted); see also Saldana, 260 F.3d at 232 (citations omitted).  Summary judgment should be granted where a party "fails to make a

7

showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial." Celotex, 477 U.S. at 322-23. "'Such affirmative evidence – regardless of whether it is direct or circumstantial – must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance.'" Saldana, 260 F.3d at 232 (quoting Williams v. Borough of West Chester, 891 F.2d 458, 460-61 (3d Cir. 1989)).

**Statutory Immunity**

Plaintiff states that following an altercation with Inmate Pettus he was strip searched during which he was allegedly subjected to a sexual assault and unnecessary use of force.  The day following that alleged incident, Plaintiff states that he met with PA Hemphill who "examined my penus [sic] area and saw bruising, my wrist are saw bruising prescribed me pain meds and cream wrote a report on the incident".  Doc. 1, Section V, ¶ 26.  According to the Complaint, Hemphill allegedly acted with deliberate indifference to Millbrook's need for medical treatment and failed to report the sexual assault.[6] See id., ¶ 23.

Defendants contend that PA Jon Hemphill is entitled to statutory immunity

---

[6] The Complaint clearly includes contradictory factual assertions as to whether Hemphill reported the alleged sexual assault.

on the basis that as an employee of the Public Health Services at all times relevant to this Complaint he cannot be sued in a <u>Bivens</u> action. <u>See</u> Doc. 71, p. 36. In support of their argument they have submitted a declaration under penalty of perjury by Hemphill wherein he identifies himself as being a "Commander in the United States Public Health Services" during the relevant times in the Complaint. Doc. 70-1, Exhibit D, ¶ 4. Hemphill acknowledges that he conducted a medical assessment of Millbrook on May 13, 2011. The Defendant adds that Plaintiff gave him a written note alleging sexual assault by a staff member which he turned over to the investigative department.

In <u>Cuoco v. Moritsugu</u>, 222 F.3d 99, 107 (2nd Cir. 2000), the Court of Appeals for the Second Circuit concluded that under 42 U.S.C. § 233(a), members of the Public Health Services were absolutely immune from suit in a <u>Bivens</u> action if the injury for which compensation is sought resulted from the performance of a medical or related function while acting within the scope of their office or employment. Section 233(a) adds that an FTCA claim is the exclusive remedy for the performance of medically related functions by employees of the Public Health Services.

The undisputed record establishes that PA Hemphill is a commissioned officer of the Public Health Services and was so during the relevant time period of

9

this action. Second, the claims against Hemphill appear to be based on actions taken by that Defendant while conducting a medical assessment of Plaintiff. Based upon those considerations, Defendant Hemphill is entitled to entry of summary judgment with respect to Plaintiff's Bivens claims.

## Personal Jurisdiction

Defendants initially argue that this Court lacks personal jurisdiction over Defendant Unknown Correctional Officer since that Defendant has not yet been served. See Doc. 71, p. 18. It is undisputed that the Defendants include an individual identified only as "unknown correctional officer."[7] See Doc. 1, p. 4.

John/Jane Doe defendants may only be allowed "to stand in for the alleged real parties until discovery permits the intended defendants to be installed." Johnson v. City of Erie, 834 F. Supp. 873, 878 (W.D. Pa. 1993) (citations omitted). Absent compelling reasons, a district court may dismiss such defendants if a plaintiff, after being granted a reasonable period of discovery, fails to identify them. Scheetz v. Morning Call, Inc., 130 F.R.D. 34, 37 (E.D. Pa. 1990) ("Fictitious parties must eventually be dismissed, if discovery yields no identities.").

---

[7] Since the United States of America is the only proper defendant in an FTCA action, this discussion is limited to the Bivens claims asserted against the John/Jane Doe Defendant.

10

Based on this Court's review of the record, although this action was initially was filed over two (2) years ago on February 28, 2012, Plaintiff has not yet provided this Court with the identity of the John/Jane Doe defendant. Accordingly, Defendant Unknown Correctional Officer will be dismissed from the <u>Bivens</u> portion of this action under the authority of <u>Scheetz</u>.[8]

## Timeliness

Defendants' second argument seeks dismissal of Plaintiff's <u>Bivens</u> claims pertaining to the alleged events of March 1, 2010 and March 5[9], 2010 as being untimely filed. <u>See</u> Doc. 71, p. 19. They assert that since this case was not initiated until March 7, 2012, Plaintiff's claims relating to actions which transpired on March 1 & 5, 2010 are barred by Pennsylvania's controlling two year statute of limitations. Millbrook generally counters that his allegations should not be precluded because they were timely filed. <u>See</u> Doc. 75, p. 11.

In reviewing the applicability of the statute of limitations to a civil rights

---

[8] If Plaintiff can identify the John/Jane Doe Defendant he may file a motion for reconsideration within fourteen (14) days of the date of this Memorandum. Any reconsideration motion should clearly identify the John/Jane Doe Defendant and provide the factual basis for the claim against that individual.

[9] Plaintiff alleges that he was sexually assaulted on March 5, 2010, which Defendants recognize in the factual background of their brief in support of the motion for summary judgment; however, the remainder of their brief refers to March 4, 2010. <u>See</u> (Doc. 71). To avoid confusion, this opinion will refer to March 5, 2010.

11

action, a federal court must apply the appropriate state statute of limitations which governs personal injury actions.  Wilson v. Garcia, 471 U.S. 261, 276 (1985); Urrutia v. Harrisburg County Police Dep't, 91 F.3d 451, 457 n.9, 25 (3d Cir. 1996).  The United States Supreme Court clarified its decision in Wilson when it held that courts considering civil rights claims should borrow the general or residual [state] statute for personal injury actions.  Owens v. Okure, 488 U.S. 235, 250 (1989); Little v. Lycoming County, 912 F.Supp. 809, 814 (M.D. Pa. 1996).  It has also been held that "state statutes of limitations should be borrowed for suits under Bivens."  Roman v. Townsend, 48 F. Supp.2d 100, 104 (D. Puerto Rico 1999).

Pennsylvania's applicable personal injury statute of limitations is two years. See 42 Pa. Cons. Stat. Ann. § 5524(7) (Purdon Supp. 1996); Kost v. Kozakiewicz, 1 F.3d 176, 190 (3d Cir. 1993); Smith v. City of Pittsburgh, 764 F.2d 188, 194 (3d Cir. 1985).

Under the standards announced in Houston v. Lack, 487 U.S. 266 (1988), Millbrook's action will be deemed filed as of February 28, 2012, the date he signed his Complaint.[10]  See Doc. 1, p. 15.  Moreover, the "Third Circuit Court of

---

[10]  Plaintiff's contention that he mailed his complaint on February 21, 2012, see (Doc. 75, p. 11), is contradicted by the fact that the Complaint is dated February 28, 2012.

Appeals, in non-precedential decisions, has noted that it may be appropriate to toll the statute of limitations during the period in which a prisoner pursues administrative remedies." Thomas v. Palakovich, No. 3:11-CV-2172, 2012 WL 1079441 *4 (M.D. Pa. 2012); Everett v. Nort, No. 10-561, 2013 WL 1087681 *3 (W.D. Pa. 2013) (concluding that because the PLRA requires administrative exhaustion, the statute of limitations may be tolled pending completion of exhaustion of the prison grievance system). See also Davila v. Sheriff's Dept., 413 Fed. App'x 498, 502 (3d Cir. 2011). Consequently, even if this Court were to accept March 7, 2012 as being the filing date of this action, based upon the reasoning set forth in Thomas, Everett, and Davila, Plaintiff's claims relating to March 1 & 5, 2010 would still not be precluded from consideration under Pennsylvania's controlling two year statute of limitations as Millbrook would be entitled to tolling of the statute of limitations pending his administrative exhaustion of those claims. Defendants' untimeliness arguments clearly lack merit.

## Administrative Exhaustion

The third argument raised by Defendants acknowledges that Millbrook properly exhausted his administrative remedies regarding "his [Bivens] claims

13

relative to the March and November incidents."[11]  Doc. 71, p. 22.  They also

concede that Plaintiff did exhaust an administrative tort claim[12] regarding the May

2011 incident.  See id. at p. 12.   However, they assert that Millbrook did not

administratively exhaust his <u>Bivens</u> failure to protect, deliberate indifference, and

retaliation claims related to the events of May 12, 2011.

   According to Defendants, between January, 2011 and April 13, 2013,

Plaintiff filed three administrative grievances with the Bureau of Prisons (BOP),

none of which had to do with the events which transpired during May 2011.

Plaintiff indicates that any failure to exhaust was caused by staff interference.  See

Doc. 75, p. 14.

   Section 1997e(a) of title 42 U.S.C. provides:

> No action shall be brought with respect to prison
> conditions under Section 1979 of the Revised Statutes of
> the United States (42 U.S.C. 1983), or any other federal
> law, by a prisoner confined in any jail, prison, or other
> correctional facility until such administrative remedies as
> are available are exhausted.

---

   [11] As discussed later herein, there is no assertion that any of the Defendants
named in this action were involved in the conduct underlying the March 2010
incident and Assistant Warden Rear is the only Defendant linked to the November 12,
2010 incident.

   [12] An action initiated in federal court pursuant to the FTCA must first be
submitted in writing to the appropriate federal agency as an administrative tort claim.
There are administrative procedures set forth in the FTCA which must be strictly
followed.  See <u>Bradley v. United States</u>, 856 F.2d 575, 577-79 (3d Cir. 1988).

Section 1997e(a) requires administrative exhaustion "irrespective of the forms of relief sought and offered through administrative avenues." Porter v. Nussle, 122 S.Ct. 983, 992 (2002); Booth v. Churner, 532 U.S. 731, 741 n.6 (2001). Claims for monetary relief are not excused from the exhaustion requirement. Nyhuis v. Reno, 204 F.3d 65, 74 (3d Cir. 2000). Dismissal of an inmate's claim is appropriate when a prisoner has failed to exhaust his available administrative remedies before bringing a civil rights action. Ahmed v. Sromovski, 103 F. Supp. 2d 838, 843 (E.D. Pa. 2000). "[E]xhaustion must occur prior to filing suit, not while the suit is pending." Tribe v. Harvey, 248 F.3d 1152, 2000 WL 167468, *2 (6th Cir. 2000) (citing Freeman v. Francis, 196 F.3d 641, 645 (6th Cir. 1999)); Oriakhi v. United States, 165 Fed. Appx. 991, 993 (3d Cir. 2006).

The United States Supreme Court in Jones v. Bock, 549 U.S. 199, 219 (2007), stated that the primary purpose of the exhaustion requirement is to allow "a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." Id. The administrative exhaustion mandate also implies a procedural default component. Spruill v. Gillis 372 F.3d 218, 222 (3d Cir. 2004).

As explained by the Third Circuit Court of Appeals, a procedural default

15

rule "prevents an end-run around the exhaustion requirement." Id. at 230. It also ensures "prisoner compliance with the specific requirements of the grievance system" and encourages inmates to pursue their administrative grievances "to the fullest." Id. Similarly, the Supreme Court has observed that proper exhaustion of available administrative remedies is mandatory, meaning that prisoners must comply with the grievance system's procedural rules, including time limitations. Woodford v. Ngo, 548 U.S. 81 (2006).

"There is no futility exception to the exhaustion requirement." Brown v. Croak, 312 F.3d 109, 112 (3d Cir. 2002) (citing Nyhuis, 204 F.3d at 75). The Third Circuit Court of Appeals reiterated its no futility exception by rejecting an inmate's argument that exhaustion should be excused because prisoner grievances were regularly rejected. Hill v. Smith, 186 Fed. Appx. 271, 274 (3d Cir. 2006). The Court of Appeals has also rejected "sensitive' subject matter or 'fear of retaliation' as a basis for excusing a prisoner's failure to exhaust." Pena-Ruiz v. Solorzano, 281 Fed. Appx. 110, 113 (3d Cir. 2008).

An inmate is not required to specifically plead or demonstrate exhaustion in his or her complaint. See Jones, 549 U.S. at 216; see also Ray v. Kertes, 285 F.3d 287 (3d Cir. 2002) (holding that a prisoner does not have to allege in his complaint that he has exhausted administrative remedies). Rather, pursuant to the standards

announced in <u>Williams v. Runyon</u>, 130 F.3d 568, 573 (3d Cir. 1997), it is the

burden of a defendant asserting the defense of non-exhaustion to plead and prove

it.[13]

The BOP has a well established three (3) step Administrative Remedy

Program whereby a federal prisoner may seek review of any aspect of his

imprisonment. <u>See</u> 28 C.F.R. §§ 542.10-542.19. After attempting to informally

resolve the issue, a BOP inmate can initiate the first step of the grievance process

by submitting "a formal written Administrative Remedy Request, on the

appropriate form (BP-9)," within twenty (20) calendar days "following the date

on which the basis for the Request occurred." <u>See</u> 28 C.F.R. § 542.14(a). The

Warden has twenty (20) calendar days from the date the Request or Appeal is filed

in which to respond." <u>See</u> 28 C.F.R. § 542.18. If not satisfied with the Warden's

response, an inmate may appeal (step two) on the appropriate form (BP-10) to the

Regional Director within twenty (20) calendar days of the date the Warden signed

the response. <u>See</u> 28 C.F.R. § 542.15. Finally, if the inmate is dissatisfied with

the Regional Director's response, that decision may then be appealed (step three)

on the appropriate form (BP-11) to the General Counsel within thirty (30) calendar

---

[13] In <u>Mitchell v. Horn</u>, 318 F.3d 523, 529 (3d Cir. 2003), the United States
Court of Appeals for the Third Circuit similarly stated that "[f]ailure to exhaust
administrative remedies is an affirmative defense for the defendant to plead."

days from the date the Regional Director signed the response. Id. Additionally, "[i]f the inmate does not receive a response within the time allotted for reply, including extension, the inmate may consider the absence of a response to be a denial at that level." Id.

A declaration under penalty of perjury submitted by USP-Lewisburg Attorney Advisor Michael Romano states that based on a review of the BOP's computerized records, during the course of his federal confinement from January 1, 2011 to April 13, 2013, Plaintiff initiated three requests for administrative relief. (Doc. 70-1, Exhibit A, ¶ 8). However, none of those filings regarded the May 2011 alleged events. Accompanying Romano's declaration are copies of the relevant institutional administrative remedy records.

As noted earlier, Plaintiff's opposing brief generally indicates that the failure to exhaust was due to no fault of his own and happened because he was hindered from filing administrative grievances by prison officials. Doc. 31, p. 17.

Based upon Romano's declaration, the submitted BOP administrative remedy records, and Plaintiff's own admission that he failed to complete the grievance process, Defendants have satisfied their burden under Williams of establishing that Millbrook did not administratively exhaust his Bivens failure to protect, deliberate indifference, and retaliation claims with respect to the events of

18

May 12, 2011.

In reaching this determination, the Court notes that Millbrook has not made any credible showing that he should be excused from compliance with the exhaustion requirement regarding those unexhausted <u>Bivens</u> claims. Plaintiff's contention that he was prevented from seeking administrative relief is clearly undermined by the undisputed fact that he was able to exhaust an administrative tort claim stemming from the same May 2011 event. Accordingly, entry of summary judgment on the basis of non-exhaustion is appropriate with respect to all <u>Bivens</u> claims regarding the events of May, 2011.[14]

## Personal Involvement/ Respondeat Superior

It is alternatively asserted that the claims against ex-Warden Bledsoe, Assistant Warden Rear, Counselor Edinger, PA Hemphill, Paramedic Walls, Lieutenant Fosnot, and CO Hawk cannot proceed because they lacked personal involvement, and liability cannot be based upon a theory of <u>respondeat superior</u>. <u>See</u> Doc. 71, p. 23.

A plaintiff, in order to state an actionable civil rights claim, must plead two

---

[14] Specifically, the May 12, 2011 claims are that: (1) Defendant Edinger failed to protect Plaintiff's safety; (2) Defendant Walls and an unidentified corrections officer subjected Plaintiff to cruel and unusual punishment while performing a strip search; (3) Defendants Hawk, Hemphill, Bledsoe, Rear and Fosnot failed to take corrective action.

essential elements: (1) that the conduct complained of was committed by a person acting under color of law, and (2) that said conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States. Groman v. Township of Manalapan, 47 F.3d 628, 638 (3d Cir. 1995); Shaw by Strain v. Strackhouse, 920 F.2d 1135, 1141-42 (3d Cir. 1990).

Civil rights claims cannot be premised on a theory of respondeat superior. Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). Rather, each named defendant must be shown, via the complaint's allegations, to have been personally involved in the events or occurrences which underlie a claim. See Rizzo v. Goode, 423 U.S. 362 (1976); Hampton v. Holmesburg Prison Officials, 546 F.2d 1077 (3d Cir. 1976). As explained in Rode:

> A defendant in a civil rights action must have personal involvement in the alleged wrongs. . . . [P]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity.

Rode, 845 F.2d at 1207.

Prisoners also have no constitutionally protected right to a grievance procedure. See Jones v. North Carolina Prisoners' Labor Union, Inc., 433 U.S. 119, 137-38 (1977) (Burger, C.J., concurring) ("I do not suggest that the

20

[grievance] procedures are constitutionally mandated."); <u>Speight v. Sims</u>, No. 08-2038, 2008 WL 2600723, *1 (3d Cir. 2008) (citing <u>Massey v. Helman</u>, 259 F.3d 641, 647 (7th Cir. 2001) ("[T]he existence of a prison grievance procedure confers no liberty interest on a prisoner.")).

While prisoners do have a constitutional right to seek redress of their grievances from the government, that right is the right of access to the courts, which is not compromised by the failure of prison officials to address an inmate's grievance. See <u>Flick v. Alba</u>, 932 F.2d 728, 729 (8th Cir. 1991) (Federal grievance regulations providing for administrative remedy procedure do not create liberty interest in access to that procedure.).

Pursuant to those decisions, any attempt by Plaintiff to establish liability solely based upon the handling of his administrative grievances or complaints does not support a constitutional claim. See also <u>Alexander v. Gennarini</u>, 144 Fed. Appx. 924, 925 (3d Cir. 2005) (finding that involvement in post-incident grievance process was not a basis for § 1983 liability); <u>Pryor-El v. Kelly</u>, 892 F. Supp. 261, 275 (D. D.C. 1995) (concluding that because prison grievance procedure does not confer any substantive constitutional rights upon inmates, the prison official's failure to comply with grievance procedure is not actionable).

Defendants contend that there are no assertions that they were personally

involved in the March 1, 2010 and November 12, 2010 incidents. See Doc. 71, p. 25. A review of the Complaint reveals that Plaintiff claims that he was assaulted by his cell mate on March 1, 2010. Millbrook states that prior to this incident, he told two non-defendants, Captain Trate and SIS Perrin, that he needed to be placed in protective custody. While these allegation adequately allege a claim against non-defendants Trate and Perrin, they do not assert any personal involvement in constitutional by any named Defendant in that conduct. Summary judgment will be granted in favor of all Defendants with respect to the events of March 1, 2010.

However, Plaintiff also contends that he was sexually assaulted by Defendant Edinger and two non-defendants on March 5, 2010 in the basement of the SMU. This allegation adequately alleges personal involvement by Edinger in constitutional misconduct.

Plaintiff was sexually assaulted by a different unidentified USP-Lewisburg prisoner on or about November 12, 2010. It is alleged that this attack was set up by Correctional Officers Hess and Ross and witnessed by Assistant Warden Rear. See id. at ¶ 12. Hess and Ross are not named as Defendants in this matter and there are no allegations raised against Bledsoe, Edinger, Hemphill, Walls, Fosnot and Hawk with respect to this purported event. Consequently, those Defendants are entitled to entry of summary judgment with respect to the November 12, 2010

22

incident.

With respect to Assistant Warden Rear, a liberal reading of the pro se Complaint provides that Millbrook claims that she witnessed the attack and failed to intervene. Such a contention is sufficient to allege personal involvement in unconstitutional conduct by that Defendant.[15]  Accordingly, Assistant Warden Rear's lack of personal involvement argument lacks merit.

In regards to ex-Warden Bledsoe, Plaintiff states only that he told Bledsoe on May 21, 2011 that he had been assaulted by prison staff and that the Warden failed to take any action. Plaintiff also admits that he is asserting a claim of supervisory liability against Bledsoe. First, Bledsoe was clearly employed in a supervisory capacity at USP-Lewisburg. Second, there are no allegations that said Defendant was personally involved in the alleged constitutional violations. Third, there are no factual assertions set forth in the Complaint which could establish that ex-Warden Bledsoe directed or acquiesced in any violations of Plaintiff's constitutional rights.

Based upon the standards announced in Rode, Bledsoe is clearly entitled to

---

[15]  As discussed in greater detail herein, a prison official who witnesses a prisoner being physically assaulted by another corrections officer but who fails to take any steps to protect the prisoner violates the Eighth Amendment. Smith v. Mensinger, No. 99-1382, 2002 WL 1283688 * 7-8 (3d Cir. 2002).

entry of summary judgment as it is apparent Plaintiff is attempting to establish

liability against him solely on the basis of his former supervisory capacity within

USP-Lewisburg.  This conclusion is bolstered by the fact that Plaintiff also enjoys

no constitutional right to a grievance procedure.  Therefore, entry of summary

judgment is appropriate with respect to any claims against Bledsoe premised on

his responses or non-response to any administrative grievances or complaints.

## Failure to Protect

Plaintiff raises <u>Bivens</u> claims pertaining to a purported  assault against him

in the SMU by an unidentified USP-Lewisburg prisoner which occurred on or

about November 12, 2010.  Defendants concede that this allegation has been

administratively exhausted.  The claim has also been timely filed.

It is alleged that this attack was set up by Correctional Officers Hess and

Ross and witnessed by Assistant Warden Rear.  See <u>id</u>. at ¶ 12.  Hess and Ross are

not named as Defendants in this matter.  Consequently, the only viable allegation

is that Defendant Rear failed to protect Plaintiff's safety.

Defendants maintain that Millbrook's vague unsupported claim should not

proceed because Rear has submitted a supporting declaration denying that she

witnessed the attack and because there are no institutional records indicating that

the incident took place.[16] In an opposing brief, Plaintiff asserts that the incident

actually transpired during September 2010. See Doc. 75, p. 18.

A prison official who witnesses a prisoner being physically assaulted by

another corrections officer but who fails to take any steps to protect the prisoner

violates the Eighth Amendment. Smith, 2002 WL 1283688 at *7-8; Estate of

Davis v. Delo, 115 F.3d 1388, 1395-96 (8th Cir. 1997); Gaudreault v. Salem, 923

F.2d 203, 207 n.3 (1st Cir.), cert. denied, 500 U.S. 956 (1990) (stating, "an officer

who is present at the scene and who fails to take reasonable steps to protect the

victim of another officer's use of excessive force can be held liable . . . ."); O'Neill

v. Krzeminski, 839 F.2d 9, 11 (2d Cir. 1988) ("[A] law enforcement officer has an

affirmative duty to intercede on the behalf of a citizen whose constitutional rights

are being violated in his presence by other officers."); Laury v. Greenfield, 87 F.

Supp. 2d 1210, 1216 (D. Kan. 2000); Ruble v. King, 911 F. Supp. 1544, 1555-56

(N.D. Ga. 1995).

Plaintiff's opposing brief contends for the first time in this action that the

sexual assault allegedly witnessed by Assistant Warden Rear actually occurred in

---

[16] This argument is somewhat diluted by Defendants' admission that Plaintiff exhausted a grievance regarding the incident. See Doc. 71, p. 22.

September, 2010.[17]  See Doc. 75, p. 18.  However, Millbrook provides no other details regarding this event or even an exact date.  His assailant is not identified.  The nature of the sexual assault is not described.  Moreover, Plaintiff does not state what was witnessed by Rear.  More importantly, Millbrook also does not offer any facts which could support a claim that Rear had a reasonable opportunity to protect him, but failed to take any action.

Based upon an application of the above standards to Plaintiff's vague claim that Defendant Rear witnessed him being sexually assaulted, Millbrook has failed to sufficiently state a failure to protect claim against the Assistant Warden.

## March 5, 2010 Claim

As previously discussed, Plaintiff claims that Defendant Edinger was one of three correctional staff members who sexually assaulted him on March 5, 2010.  See Doc. 1 & 13.  Defendants request that said Bivens claim be joined with Plaintiff's previous filed FTCA action regarding that same incident.  See Doc. 71, p. 21 n.13.

The pending claim against Edinger stems from the same incident underlying Plaintiff's FTCA action.  The Defendants in both actions are represented by the same counsel.  Plaintiff has requested that an advisory jury be convened in his

---

[17] It is noted that Plaintiff has not sought leave to amend his Complaint.

26

FTCA action. Moreover, the only other surviving claim in this matter is an unrelated FTCA claim. Based upon those considerations, this Court agrees that joinder would promote judicial economy. Accordingly, Defendants' request for joinder of the remaining March 5, 2010 claims will be granted.

## FTCA

Plaintiff seeks relief under the FTCA with respect to the alleged May 12, 2011 sexual assault by Defendant Walls. His claim is twofold. First, Millbrook contends that the purported sexual assault by Paramedic Walls constituted an intentional tort. Second, it is alleged that Defendant Unknown Correctional Officer who witnessed the attack was negligent for failing to protect Plaintiff's safety.

The FTCA provides a remedy in damages for tortious conduct by employees of the United States. United States v. Muniz, 374 U.S. 150, 150 (1963). Under the FTCA, sovereign immunity is waived against persons suing the federal government for the commission of various torts. Simon v. United States, 341 F.3d 193, 200 (3d Cir. 2003). Liability under the FTCA only exists for conduct by government employees while acting within their scope of employment. Matsko v. United States, 372 F.3d 556, 559 (3d Cir. 2004). When determining if a defendant was acting within the scope of his employment at the time of the underlying

27

incident, courts must look to the law of the state where the incident occurred.

Doughty v. United States Postal Service, 359 F. Supp.2d 361, 365 (D.N.J. 2005).

It also provides a remedy in damages for the simple negligence of

employees of the United States to protect federal inmates. United States v. Muniz,

374 U.S. 150, 150 (1963). In presenting a FTCA claim, a plaintiff must show: (1)

that a duty was owed to him by a defendant; (2) a negligent breach of said duty;

and (3) that the negligent breach was the proximate cause of the plaintiff's

injury/loss. Mahler v. United States, 196 F. Supp. 362, 364 (W.D. Pa. 1961), aff'd,

306 F.2d 713 (3d Cir.), cert. denied, 371 U.S. 923 (1962).

It is well-settled that a federal district court in considering an FTCA action

must apply the law of the state in which the alleged tortious conduct occurred, in

this case, Pennsylvania. 28 U.S.C. § 1346(b) (1996); Toole v. United States, 588

F.2d 403, 406 (3d Cir. 1978); O'Neal v. Department of Army, 852 F. Supp. 327,

334-35 (M.D. Pa. 1994); Turner v. Miller, 679 F. Supp. 441, 443 (M.D. Pa. 1987).

However, in cases such as this which involves federal prisoners, it has been

recognized that the government's duty of care is one of ordinary diligence. See 18

U.S.C. § 4042; Turner, 679 F. Supp. at 443. The applicable law with respect to the

burden and quantum of proof under the FTCA remains that of the state in which

the alleged tortious conduct occurred. Hossic v. United States, 682 F. Supp. 23,

25 (M.D. Pa. 1987).

Under Pennsylvania law, a plaintiff is required to show that the defendant's negligence was the proximate cause of his injury by a preponderance of the evidence. Baum v. United States, 541 F. Supp. 1349, 1351 (M.D. Pa. 1982). Furthermore, Pennsylvania law defines proximate cause as causation which was a substantial factor in bringing about the injury. Hamil v. Bashline, 392 A.2d 1280, 1284 (Pa. 1978).

Defendants argue that the FTCA claims should be dismissed because Millbrook has not shown that the Unknown Correctional Officer was previously aware that Plaintiff would be assaulted or had sufficient opportunity to intervene on Plaintiff's behalf since the alleged sexual groping only lasted a few seconds. See Doc 71, p. 38.

It is initially noted that the pending dispositive motion does not address the claim that Walls' alleged sexual assault constituted an intentional tort. Since it is alleged that the sexual assault was committed by Walls while carrying out his duties, and has not been otherwise addressed by Defendants, it will be allowed to proceed.

Second, since Millbrook contends that the Unknown Correctional Officer physically restrained Plaintiff while the alleged attack occurred, this Court is

29

satisfied that Millbrook has made a sufficient showing at this juncture in the proceedings that the alleged conduct of the Unknown Correctional Officer could have both constituted a lack of diligence and been a proximate cause of his injury,[18] as such this FTCA claim will also be allowed to proceed.

## Conclusion

Defendants' pending dispositive motion is construed as solely seeking summary judgment. Plaintiff's claims relating to the events of March 1 & 5, 2010 are not precluded from consideration as being untimely raised under Pennsylvania's controlling two year statute of limitations.

However, entry of summary judgment in favor of all Defendants on the basis of lack of personal involvement is appropriate regarding the <u>Bivens</u> claims stemming from March 1, 2010, and in favor of all Defendants, except Rear, pertaining to the claims arising on November 12, 2010. However, the vague <u>Bivens</u> claim that Defendant Rear failed to protect Plaintiff's safety on or about November 12, 2010, will not be allowed to proceed because Plaintiff's unsubstantiated allegations do not create a genuine issue of material fact.

As to the allegations regarding March 5, 2010, Plaintiff has alleged personal

---

[18] As previously noted, Defendant Hemphill in conducting a post incident assessment opined that Plaintiff suffered bruising to his penis. This Court makes no determination as to whether said bruising was the result of any conduct by Walls.

involvement of Defendant Edinger and this claim will be allowed to proceed. However, this claim will be joined into Plaintiff's FTCA action at No. 11-131.

Defendants' request for entry of summary judgment on the basis of non-exhaustion of administrative remedies will be granted with respect to Plaintiff's Bivens claims pertaining to the events of May, 2011. Moreover, summary judgment is appropriate on these Bivens claims against the John Doe Defendant, Unknown Correctional Officer, for the Court's lack of personal jurisdiction. Further, Defendant Hemphill, who is named regarding the May, 2011 incident, is entitled to entry of summary judgment with respect the Bivens portion of the Complaint because he enjoys statutory immunity as an employee of the Public Health Services.

Summary judgment will be granted in favor of ex-Warden Bledsoe to the extent Plaintiff attempts to establish liability against him on the basis of his supervisory capacity within USP-Lewisburg or on his responses or non-response to Millbrook's administrative grievances or complaints.[19]

The FTCA claim pertaining to an alleged sexual assault on May 12, 2011, committed by Paramedic Walls will be allowed to continue.

---

[19] Based upon the Court's conclusions herein, discussion of the additional arguments raised by Defendants is not required.

An appropriate Order will be entered.

_United States District Judge_

Dated:  March 25, 2014