UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **KIM MILLBROOK,** | : | |
| Plaintiff | : | CIVIL ACTION NO. 3:11-131 |
| v. | : | (JUDGE MANNION) |
| **UNITED STATES OF AMERICA,** | : | |
| Defendant | : | |

### MEMORANDUM

This matter is before the court following a non-jury trial to determine whether the plaintiff, Kim Millbrook, ("Millbrook"), has established by a preponderance of the evidence his claim against the defendant, United States of America, (the "Government"), pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§1346, 2671, *et seq.* After considering the testimony and evidence presented at the trial, the court finds that Millbrook has not established his claim against the Government. Thus, judgment will be entered in favor of the Government.

Pursuant to Federal Rule of Civil Procedure 52(a), this memorandum sets forth the court's findings of fact and conclusions of law regarding Millbrook's claim. *See* Fed.R.Civ.P. 52(a)(1) ("In an action tried on the facts

without a jury or with an advisory jury, the court must find the facts specially and state its conclusions of law separately.")

I. **PROCEDURAL HISTORY**

By way of relevant background,[1] on January 19, 2021, Millbrook commenced this suit by filing a complaint asserting a combined *Bivens* and FTCA action. (Doc. 1). Judge John E. Jones III, by an August 3, 2020 order adopting the report and recommendation of Judge Martin C. Carlson, dismissed Millbrook's *Bivens* claim. (Docs. 134, 146). Accordingly, Millbrook's FTCA claim is the remaining claim for resolution.

On August 2, 2021, the matter was referred to the undersigned. The final pre-trial conference was held on February 28, 2022. A non-jury trial was held on March 29, 2022. Following the non-jury trial, the parties timely filed their proposed findings of fact and conclusions of law. (Docs. 166, 167).

---

[1] The history of this case is complex and reflects a longstanding conflict between Millbrook and the United States, the federal institution which detained him, and the institution's employees. Because the detailed background of this case is stated in the July 10, 2020 report and recommendation of Judge Martin C. Carlson, (Doc. 134) and March 25, 2014 memorandum of Judge William J. Nealon, (Doc. 85), it is not repeated herein.

## II. FINDINGS OF FACT

Upon careful review of the testimony and evidence presented at trial, as well as the submissions of counsel, the court makes the following findings of fact:

1. Millbrook was incarcerated in a United States Penitentiary ("USP"). On March 1, 2010, Millbrook was moved from USP Terre Haut, Indiana to USP Lewisburg ("Lewisburg"), Pennsylvania. (Doc. 164 at 6:4-11).

2. Lieutenant Matt Edinger ("Edinger"), Officer Kevin Gemberling ("Gemberling"), and Officer Jeff Pealer ("Pealer") were employed by the Bureau of Prisons ("BOP") at Lewisburg.

3. Dr. Kevin Pigos ("Dr. Pigos") was a medical officer employed by the BOP at Lewisburg. *Id*. at 72: 5-13.

4. During his first night at Lewisburg, Millbrook was involved in a physical altercation with his cellmate in D block. *Id*. at 7:19-8:23. Following the altercation, Millbrook was moved to G block. *Id*. at 9:1-7.

5. A shakedown was performed in G block on March 4, 2010, during which prison officials conducted searches of inmates and cells. *Id*. 96:1-10; 98:20-24.

6. On the morning of March 4, 2010, Millbrook was involved a physical altercation with his cellmate in G block. *Id*. at 20:21-21:12. Following the

altercation, Millbrook was removed from his cell to the first-floor shower area. *Id*. at 22:3-12.

7. Later, on March 4, 2010, Edinger and Pealer moved Millbrook from the first-floor shower area to a holding cell in the basement. *Id*. at 104:6-9; 112:2-5.

8. Edinger did not place Millbrook in a chokehold while Millbrook was being held at the basement holding cell on March 4, 2010. *Id*. at 99:18-19.

9. Pealer did not force Millbrook to perform oral sex on him while Millbrook was being held at the basement holding cell on March 4, 2010. *Id*. at 112:18-20.

10. Gemberling did not see Edinger choke Millbrook and did not see Millbrook perform oral sex on Pealer while Millbrook was being held at the basement holding cell on March 4, 2010. *Id*. at 125:6-8.

11. On March 5, 2010, Millbrook reported that he was sexually assaulted to a prison official at Lewisburg. *Id*. at 46:12-16.

12. Later on March 5, 2010, Dr. Pigos conducted a medical assessment of Millbrook and reflected his findings in a clinical care report (the "Report"). *Id*. at 74:15-23; (Gov't Ex. 5). During the medical assessment, Millbrook told Dr. Pigos that he was choked until he almost lost consciousness and that an officer forced him to perform oral sex. (Gov't Ex. 5 at 1). Dr. Pigos

found no evidence of any trauma or bruising to Millbrook's neck. *Id*. at 2,5. Millbrook was not given a sexual assault evaluation because the period during which evidence of sexual assault could be recovered had lapsed. *Id*. at 5.

13. On March 5, 2010, a captain and an investigative agent were among several officials employed at Lewisburg who evaluated Millbrook in response to his allegation of sexual assault. *Id*. at 87:18-88:8.

14. In finding that Pealer did not force Millbrook to perform oral sex on him and that Edinger did not place Millbrook in a chokehold while Millbrook was held in a basement holding cell on March 4, 2010, the court acknowledges that there were significant differences between Millbrook's account of events and that of the Government's witnesses. Namely, the following testimonies were given at trial:

   a. Millbrook testified that on March 4, 2010, Pealer moved him from the first-floor shower area to a holding cell in the basement and left him in the cell for thirty to forty-five minutes. *Id*. at 25:10-26:18. He testified that Pealer then returned to the basement with Gemberling and Edinger. *Id*. at 34:2-7. Allegedly, while Gemberling stood by the door and watched, Edinger put Millbrook in a chokehold and Pealer

demanded that Millbrook perform oral sex on him. *Id*. at 36:4-37:9, 37:21-38-8.

b. Edinger testified that he and Pealer brought Millbrook to the basement on March 4, 2010 but he did enter the basement holding cell where Millbrook was placed. *Id*. at 99:3-5,9-11. He claimed he did not choke Millbrook, did not see Millbrook perform oral sex on Pealer, and did not see Gemberling in or around Millbrook's cell on that day. *Id*. at 99:18-100:2.

c. Pealer testified he could specifically recall bringing Millbrook to the basement on March 4, 2010 and averred that he did not enter the basement holding cell where Millbrook was placed. *Id*. at 112:2-5, 9-11. He further testified he never forced Millbrook to perform oral sex and did not see Edinger choke Pealer. *Id*. at 112:15.

d. Gemberling testified he went down to the basement numerous times on March 4, 2010 but did not recall seeing or having any interaction with Millbrook on that day. *Id*. at 125:14-22.

e. Dr. Pigos, relying upon the Report, testified that Millbrook had no complaint of pain during his medical assessment on March 5, 2010. *Id*. 78:11-22. Dr. Pigos also testified to finding no evidence of trauma to Millbrook's neck to support Millbrook's allegation of

having been chocked to the point of unconsciousness. *Id*. at 80:21-24; 88:22:89:9.

15. As the finder of fact in this bench trial, the court finds that certain issues weigh on the credibility of the witnesses' statements at trial. Fed. R. Civ. P. 52(a)(6) ("Findings of fact, whether based on oral or other evidence, must not be set aside unless clearly erroneous, and the reviewing court must give due regard to the trial court's opportunity to judge the witnesses' credibility."). Specifically, the court notes the following:

    a. Counsel for the Government argues that Millbrook's instant accusations are motivated by his desire to be transferred to a different prison or be placed in a single cell. The Government points out that Millbrook has had a long history of bringing assault allegations against the Federal Bureau of Prisons ("BOP"). At trial, Millbrook testified that he has previously refused to take cellmates while incarcerated at a BOP prison and, upon his arrival at Lewisburg, had asked to be transferred out of Lewisburg or be placed in a single cell. *Id*. at 60:9-61:9. It is also undisputed that Millbrook was involved in physical altercations with two different cellmates during his first week at Lewisburg. *Id*. at 8:9-21, 17:21-19:5. In light of such evidence, the court finds the Government's

theory that Millbrook's instant accusations were motivated by a desire to manipulate the conditions of his confinement to be credible.

b. The court finds the March 5, 2010 medical record of Dr. Pigos to be particularly convincing. It is undisputed that Dr. Pigos conducted a medical assessment of Millbrook on March 5, 2010 and reflected his findings his Report. (Gov't Ex. 5). At trial, Millbrook did not dispute the contents of the Report, including Dr. Pigos's conclusion Millbrook's neck had no signs of trauma or bruising and that Millbrook did not complaint of any pain. The court finds Dr. Pigos's Report to be credible and significantly undermines Millbrook's theory of the case.

c. The credibility of Millbrook's testimonies at trial regarding the alleged sexual assault is undermined by Dr. Pigos's Report and other evidence. First, Millbrook testified that he informed Physician's Assistant Alama about the alleged sexual assault on March 4, 2010. *Id*. at 39:18-25; 41:7-13. His testimony contradicts the Report, which notes that Millbrook did not tell anyone about the alleged assault on May 4, 2010 out of fear. (Gov't Ex. 5 at 5). Further, Millbrook's testimony that he reported the alleged sexual assault on the day of

the incident is inconsistent with the undisputed fact that a rape kit was never performed on Millbrook in response to his allegations. *Id*.; (Doc. 168 at 52:10-16).

Second, Millbrook's testimony that he was handcuffed during the alleged sexual assault contradicts the Report, which states that he had his handcuffs removed during the alleged assault. (Doc. 168 at 35:10-12, 36:1-12); (Gov't Ex. 5 at 1). Third, Millbrook's statements that he was choked by Edinger until he almost lost consciousness contradicts the Report, wherein Dr. Pigos observed that Millbrook had no signs of bruising, abrasions, or "evidence of any trauma to his neck in the reported choking." (Doc. 168 at 62:4-9); (Gov't Ex. 5 at 2, 5). Fourth, Millbrook's testimony that his neck still hurt twelve years after being allegedly placed in a chokehold strains credulity in light of the Report's conclusions. (Doc. 168 at 54:7-18). Thus, the court finds that these inconsistencies seriously undermine Millbrook's theory of the case.

d. Counsel for Millbrook argues that Gemberling, Pealer, and Edinger's testimonies that they never spoke to each other about Millbrook's instant accusations are not credible. *Id*. at 101:3-16, 116:11-20, 120:5-18, 126:21-127:2. Because this action has been

pending for over a decade and Gemberling, Pealer, and Edinger each testified to having worked with each other for several years, the court finds their testimonies of never having spoken to one another about the instant accusations to be unconvincing. *Id*. Accordingly, the court discounts the weight of such testimonies.

e. Counsel for Millbrook points out that Gemberling, Pealer, and Edinger testified that nothing unusual happened during the day of the alleged sexual assault, but also testified to some specific details regarding their handling of Millbrook on that day. But this argued incongruity in their ability to recall details of the day in question does not render their testimonies unreliable. Since the commencement of this action in 2011, Gemberling, Pealer, and Edinger have had over a decade to reflect upon Millbrook's allegations. The court thus finds it credible that they are able to testify to certain details regarding their handling of Millbrook on the day of the alleged assault.

f. The court finds the statements of the four Government witnesses to be generally credible in light of the observation that they would not have risked their careers with the BOP by assisting in the sexual assault of an inmate or failing to report an incident of sexual assault.

16. The court finds that, on balance, Gemberling, Pealer, Edinger, and Dr. Pigos provided more credible testimony than Millbrook. Additionally, the undisputed evidence supports the Government's position. Specifically, Millbrook does not dispute Dr. Pigos's medical assessment that there were no signs of any trauma to Millbrook's neck on the day after the alleged choking. Further, Millbrook has failed to produce any evidence aside from his own testimony to support his allegations against Pealer, Edinger and Gemberling.

### III. CONCLUSIONS OF LAW

1. The court has jurisdiction over the instant FTCA action against the United States. 28 U.S.C. §1346. The FTCA provides that the United States shall be liable to the same extent as a private individual "for money damages ... for ... personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment...." 28 U.S.C. §1346(b)(1). Edinger, Pealer, and Gemberling are employees of the Government as defined by the FTCA. 28 U.S.C. §§1346, 2671.

2. Under the FTCA, the district court should apply the "law of the place where the act or omission occurred." 28 U.S.C. §1346(b).

3. Because the act or omission occurred in Lewisburg, Pennsylvania, the court applies the law of Pennsylvania.

4. Under Pennsylvania law, a plaintiff must demonstrate the following elements in order to prevail in a negligence action: "(1) the defendant owed a duty to the plaintiff; (2) the defendant breached that duty; (3) a causal relationship between the breach and the resulting injury suffered by the plaintiff; and (4) actual loss suffered by the plaintiff." *Bakhiari v. Spaulding*, 17-CV-00016, 2017 WL 2778524, at *7 (M.D.Pa. June 27, 2017) (*citing Merlini ex rel. Merlini v. Gallitzin Water Auth.*, 980 A.2d 502, 506 (Pa. 2009)).

5. In Pennsylvania, "[a]ssault is an intentional attempt by force to do an injury to the person of another, and a battery is committed whenever the violence menaced in an assault is actually done, though in ever so small a degree, upon the person." *Renk v. City of Pittsburgh*, 537 Pa. 68, 76 (1994)(citation omitted).

6. In the present case, the court finds that Millbrook has failed to establish by a preponderance of the evidence that Edinger assaulted or committed a battery upon his person because there is insufficient evidence that Edinger placed the plaintiff in a chokehold, as alleged by Millbrook.

7. The court also finds that Millbrook has failed to establish by a preponderance of the evidence that Pealer assaulted or committed a battery upon his person because there is insufficient evidence that Pealer forced Millbrook to perform oral sex, as alleged by Millbrook.

8. Further, the court finds that Millbrook has failed to establish by a preponderance of the evidence that Gemberling breached a duty of care by failing to respond to the alleged sexual assault at the hands of Pealer or choking at the hands of Edinger as there is insufficient evidence that those alleged acts ever occurred.

### IV.   CONCLUSION

For the foregoing reasons, judgment will be entered in favor of the United States and against Millbrook.

An appropriate order follows.

*s/Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**DATED: June 27, 2022**
11-131-01